IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| RALPH WAYNE ANGLE, | ) |
| Plaintiff, | ) ) ) |
| vs. | )  NO. 2:04-CV-240 |
| ROGELIO DOMINGUEZ, et al., | ) ) ) |
| Defendants. | ) |

# **OPINION & ORDER**

This matter is before the Court sua sponte.  For the reasons set forth below, the Clerk is **ORDERED** to dismiss this case **WITH PREJUDICE** pursuant to 28 U.S.C. section 1915A(b)(1).  The Clerk is **FURTHER ORDERED** to close this case.

BACKGROUND

Plaintiff, Ralph Wayne Angle, a prisoner currently confined in the Metropolitan Correctional Center ("MCC"), filed an amended complaint pursuant to 42 U.S.C. section 1983, alleging violation of his federally protected rights while he was confined at the Lake County Jail as a federal pretrial detainee.  Angle names two United States Marshals and four Lake County Jail officials as Defendants.

DISCUSSION

Pursuant to 28 U.S.C. section 1915A, the Court must review the

merits of a prisoner complaint seeking redress from a governmental entity or officer or employee of a governmental entity, and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.  Courts apply the same standard under section 1915A as when addressing a motion under Federal Rule of Civil Procedure 12(b)(6) to dismiss a complaint.  *Weiss v. Colley*, 230 F.3d 1027, 1029 (7th Cir. 2000).

> A claim may be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.  Allegations of a pro se complaint are held to less stringent standards than formal pleadings drafted by lawyers.  Accordingly, pro se complaints are liberally construed.
>      In order to state a cause of action under 42 U.S.C. § 1983, the Supreme Court requires only two elements:  First, the plaintiff must allege that some person has deprived him of a federal right.  Second, he must allege that the person who has deprived him of the right acted under color of state law.  These elements may be put forth in a short and plain statement of the claim showing that the pleader is entitled to relief.  FED. R. CIV. P. 8(a)(2).   In reviewing the complaint on a motion to dismiss, no more is required from plaintiff's allegations of intent than what would satisfy Rule 8's notice pleading minimum and Rule 9(b)'s requirement that motive and intent be pleaded generally.

*Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001) (citations, quotation marks, and ellipsis omitted).

Angle brings this action under 42 U.S.C. section 1983, which provides a cause of action to redress the violation of federally

secured rights by a person acting under color of state law. *Bell v. City of Milwaukee*, 746 F.2d 1205 (7th Cir. 1984). To state a claim under section 1983, a plaintiff must allege a violation of rights secured by the Constitution and the laws of the United States, and must show that a person acting under color of state law committed the alleged deprivation. *West v. Atkins*, 487 U.S. 42 (1988). The first inquiry in every section 1983 case is whether the plaintiff has been deprived of a right secured by the Constitution or laws of the United States. *Baker v. McCollan*, 443 U.S. 137, 140 (1979).

Angle also alleges that two United States Marshals were partially responsible for some of the conditions that violated his rights. Because United States Marshals do not act under color of state law, Angle may not bring a section 1983 claim against them. But he may bring claims that persons acting under color of federal law violated his constitutional rights in a *Bivins* action. *See Bivins v. Six Unknown Named Agents*, 403 U.S. 388 (1971).

Angle seeks damages and injunctive relief governing the operation of the Lake County Jail. But if a prisoner is transferred to another prison after he files a complaint, "his request for injunctive relief against officials of the first prison is moot unless 'he can demonstrate that he is likely to be retransferred.'" *Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996) (quoting *Moore v. Thieret*, 862 F.2d 148, 150 (7th Cir. 1988)). Angle's transfer from the Lake County Jail to the MCC renders any claims for injunctive relief moot.

-3-

*O'Shea v. Littleton*, 414 U.S. 488, 495 (1974); *Martin v. Davies*, 917 F.2d 336, 339 (7th Cir. 1990); *Higgason*, 83 F.3d at 811.

Angle presents many of his claims alternatively as violations of the Eighth Amendment and as due process violations. The Eighth Amendment's prescription against cruel and unusual punishments applies only to persons convicted of crimes. *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979); *Robinson v. Moses*, 644 F. Supp. 975 (N.D. Ind. 1986). The rights of pretrial detainees are derived from the due process clause, but "the recognized standard of protection afforded to both convicted prisoners and pretrial detainees" is the same. *Palmer v. Marion County*, 327 F.3d 588, 593 (7th Cir. 2003).

A violation of the Eighth Amendment's cruel and unusual punishments clause consists of two elements: (1) objectively, whether the injury is sufficiently serious to deprive the prisoner of the minimal civilized measure of life's necessities, and (2) subjectively, whether the prison official's actual state of mind was one of "deliberate indifference" to the deprivation. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wilson v. Seiter*, 501 U.S. 294 (1991).

In Count I of his amended complaint, Angle alleges that the Lake County Jail did not have federal law research materials in its law library. He asserts that he is a federal pretrial detainee who has "been actively involved in my case, in research[ing] and reading new case law. I've been helping my attorneys and keeping them informed of new case law that . . . applies to me. Here at L.C.J. I have no

-4-

excess [sic] to any Federal Law Library Books, case cites, to help me fight my federal case." (Am. Compl. at p. 3.)

The fundamental constitutional right of access to the courts requires that prisoners have access to either law libraries or "assistance from persons trained in the law." *Bounds v. Smith*, 430 U.S. 817 (1977). Pre-trial detainees who are without counsel need the tools necessary to prepare their defense, but where a prisoner is represented by counsel, a jail need not also provide him access to legal materials. *See Martin v. Tyson*, 845 F.2d 1451, 1457 (7th Cir. 1988) (affirming dismissal of a pretrial detainee's claim of lack of access to legal materials because he "was represented by counsel on his criminal charges"). Because Angle was represented by counsel in the federal charges against him, the Lake County Jail did not have to provide him with access to legal materials with which to research the federal criminal charges against him.

In Count II of his amended complaint, Angle alleges that jail officials required him to pay for doctor and dentist visits and required a co-pay for medication. In medical care cases, the test established by *Farmer* and *Wilson* is expressed in terms of whether there was deliberate indifference to a prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

"Co-pay" policies under which inmates must bear part of the cost of their treatment have been upheld as constitutional so long as the co-pay does not interfere with timely and effective treatment of

-5-

serious medical needs. *Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404 (9th Cir. 1985); *Johnson v. Dept. of Pub. Safety & Correctional Serv.*, 885 F. Supp. 817 (D. Md. 1995). If jail officials kept Angle from seeing a doctor or obtaining medicine for a serious medical need because he could not afford it, that might state a claim upon which relief can be granted. But Angle does not allege, and it is not a reasonable inference to assume, that he was denied access to a doctor or medicine because he could not afford it. In counts IV and V, Angle states that when he needed treatment for injuries he received from another inmate, he was taken to the jail medical unit and to a hospital, and that he was seen by doctors who prescribed medication that he received.

In Count II of his amended complaint, Angle asserts that the jail's medical co-pay policy also violated 18 U.S.C. sections 4013 and 4047. Section 4047 requires the Attorney General to annually prepare and transmit to Congress a prison impact assessment reflecting the effect of changes in the law over the preceding calendar year. Accordingly, section 4047 has no relevance to Angle's claims. Section 4013 provides that:

> (a) The Attorney General, in support of United States prisoners in non-Federal institutions, is authorized to make payments from funds appropriated for the support of United States prisoners for —
> \* \* \*
> (2) medical care and necessary guard hire.

That this statute may authorize the Attorney General to make payments

for medical care of federal prisoners confined in local jails creates no enforceable right on the part of federal prisoners against jail officials or U. S. Marshals.

In Count III of his amended complaint, Angle alleges that the sanitation conditions at the Lake County Jail were poor. He specifically alleges that the showers were not cleaned daily and had mold, that every day the prisoners were only given a mop bucket and a couple of soap balls or bleach with which to clean the cellhouse, and that the jail cleaned laundry only once a week.

The Constitution does not mandate comfortable prisons or jails, and "only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson*, 501 U.S. at 298 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). Jails do not have to duplicate the amenities of small hotels, and to make out a claim under 42 U.S.C. section 1983, a prisoner must show that intentional actions of the defendants served to deprive him of a constitutional right. *Martin*, 845 F.2d at 1457. Conditions that merely cause inconvenience and discomfort or make confinement unpleasant do not rise to the level of constitutional violations. *Adams v. Pate*, 445 F.2d 105, 108-09 (7th Cir. 1971); *Del Raine v. Williford*, 32 F.3d 1024, 1050 (7th Cir. 1994) (Manion, J. concurring). "Obduracy and wantonness rather than inadvertence or mere negligence characterize conduct prohibited by the Eighth Amendment. To state a claim under the Eighth Amendment, [a

plaintiff] must, at minimum, allege facts sufficient to establish that the defendants possessed a total unconcern for [his] welfare in the face of serious risks." *McNeil v. Lane*, 16 F.3d 123, 124 (7th Cir. 1994) (citations omitted).  The conditions Angle complains of may have been inconvenient, uncomfortable, and unpleasant, but they did not deny him the minimal civilized measure of life's necessities and did not violate his constitutional rights.

In Count IV of his amended complaint, Angle alleges that on May 18, 2004, two inmates assaulted him in front of a surveillance camera. He asserts that "if staff would of been paying attention they would of seen this.  That is doing their job in the control room," they could have intervened sooner than they actually did. (Am. Compl. at p. 6.)  The officers assigned to monitor the surveillance camera are not Defendants.  Moreover, while they might not have been as vigilant as they could have been, negligence of state actors states no claim under section 1983.  *Daniels v. Williams*, 474 U.S. 327 (1986); *Davidson v. Cannon*, 474 U.S. 344 (1986)*; Moore v. State of Indiana*, 999 F.2d 1125, 1129 (7th Cir. 1993).

Prisons and jails "are dangerous places.  Housing the most aggressive among us, they place violent people in close quarters." *McGill v. Duckworth*, 944 F.2d 345, 349 (7th Cir. 1991).  Prison and jail "officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833 (quoting *Cortes-Quinones v. Jimenez-Nettleship*, 842 F.2d 556, 558 (1st Cir.

1988)).  Deliberate indifference in such circumstances is defined as "criminal recklessness."  *Farmer*, 511 U.S. at 839-40.  A "prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."  *Id.* at 847.

Deliberate indifference is shown by "something approaching a total unconcern for [the plaintiff's] welfare in the face of serious risks, or a conscious, culpable refusal to prevent harm." *Duane v. Lane*, 959 F.2d 673, 677 (7th Cir. 1992) (citing *McGill*, 944 F.2d at 347).  The defendant "must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must draw the inference."  *Farmer*, 511 U.S. at 836. A defendant must have "actual knowledge of impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." *Duckworth v. Franzen*, 780 F.2d 645, 653 (7th Cir. 1986); *see Sellers v. Henman*, 41 F.3d 1100 (7th Cir. 1994); *Duane*, 959 F.2d at 677.  This total disregard for a prisoner's safety is the "functional equivalent of wanting harm to come to the prisoner."  *McGill*, 944 F.2d at 347; *King v. Fairman*, 997 F.2d 259, 262 (7th Cir. 1993).  "A prisoner normally proves actual knowledge of impending harm by showing that he complained to prison officials about a specific threat to his safety." *McGill*, 944 F.2d at 349.

Angle does not allege that any jail official was aware that he might be attacked by another inmate, and it would not be a reasonable inference based on the facts pled in the amended complaint that any of the Defendants were aware of facts from which the inference could be drawn that a substantial risk of serious harm to Angle existed.

Angle further alleges that jail officials did not take photographs of his injuries, did not properly investigate the assault on him, and took no action against the inmates who attacked him. But the Constitution does not require jail officials to photograph inmates' injuries or that they conduct investigations of any particular diligence into inmate on inmate assaults.

In Count V of his amended complaint, entitled "Medical Neglect, Mismanagement," Angle alleges that after he was attacked by other inmates, jail officials gave him inadequate treatment for the injuries he sustained and refused to give him a second mattress. According to Angle, he "received many bruises" and a black eye, and spent several nights in pain. (Am. Compl. at p. 6.) Angle alleges that jail officials took him to the medical department and then to South Lake Methodist Hospital. He asserts that a doctor prescribed pain medication for him but that it was inadequate and did not sufficiently deal with his pain, and that after nineteen days, his right leg and ankle were still swollen and black and blue.

In medical care cases, the Eighth Amendment test is expressed in terms of whether the defendant was deliberately indifferent to the

plaintiff's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Because deliberate indifference is comparable to criminal recklessness, *Farmer*, 511 U.S. at 837, a plaintiff must demonstrate more than an inadvertent failure to provide medical care or negligence in treating a medical condition. *Estelle*, 429 U.S. at 105-07; *Billman v. Indiana Dept. of Correction*, 56 F.3d 785 (7th Cir. 1995). He must show "something approaching a total unconcern for [his] welfare in the face of serious risks, or a conscious, culpable refusal to prevent harm." *Duane*, 959 F.2d at 677.

In this portion of his amended complaint, Angle sues Sheriff Roy Dominguez, Warden Caren Jones, and Medical Director Mike Pancini, alleging that "they are responsible for the running of the Jail and Medical Department." (Am. Compl. at p. 7.)  Section 1983 creates a cause of action for damages based on personal liability. A person cannot be held liable under § 1983 unless he was personally involved in the alleged wrongdoing. A plaintiff must allege facts showing the defendant's participation or direct responsibility for the conditions of which he complains, *Starzenski v. City of Elkhart*, 87 F.3d 872, 879 (7th Cir. 1996), by demonstrating a causal link between the defendant's conduct and the plaintiff's injury. *Benson v. Cady*, 761 F.2d 335, 339 (7th Cir. 1985). Angle suggests that Defendants Dominguez, Jones, and Pancini are liable because of their subordinates' actions or inaction, but the doctrine of *respondeat superior*, under which an employer or supervisor may be held liable for

an employee's actions, has no application to § 1983 actions. *Moore*, 999 F.2d at 1129.

Moreover, even had Angle named the doctors and nurses who actually treated him, his dispute about the proper course of treatment for his injuries does not state a claim of deliberate indifference. "Under the Eighth Amendment, [the plaintiff] is not entitled to demand specific care. She is not entitled to the best care possible. She is entitled to reasonable measures to meet a substantial risk of serious harm to her. The defendants have taken those measures." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Angle was seen and treated for his injuries, albeit not in the way he would prefer. Angle might have preferred different pain medication, but he "is not entitled to demand specific care." *Forbes*, 112 F.3d at 267. Angle's dispute over what is the proper treatment does not state a claim of deliberate indifference.

In Count VI of his amended complaint, Angle alleges that he had to sleep on the floor of a cell from April 23 through May 18, 2004. Sleeping on the floor, however, states no constitutional claim upon which relief can be granted. *See Castillo v. Bowles*, 687 F. Supp. 277, 281 (N.D. Tex. 1988) (sleeping on a mattress on the floor does not deprive a prisoner of the minimal civilized measure of life's necessities). Angle does not allege that he did not have a mattress, and it is not reasonable to infer from the amended complaint that he did not have a mattress when he slept on the floor.

Angle further alleges that overcrowding at the jail "significantly increases the risks and transmission of airborne diseases." (Am. Compl. at p. 8.)  But Angle does not allege that he contracted an airborne disease from inadequate ventilation while he was at the jail, and his allegations are insufficient to establish that Defendants "acted with even the minimum level of culpability sufficient to trigger the Eighth Amendment's protection against cruel and unusual punishment, deliberate indifference." *McNeil*, 16 F.3d at 124 (citing *Helling v. McKinney*, 113 S. Ct. 2475, 2480 (1993)); *Duane*, 959 F.2d at 676.  Obduracy and wantonness rather than inadvertence or mere negligence characterize conduct prohibited by the Eighth Amendment.  "To state a claim under the Eighth Amendment, [a plaintiff] must, at minimum, allege facts sufficient to establish that the defendants possessed a total unconcern for [his] welfare in the face of serious risks."  *McNeil*, 16 F.3d at 124 (citations omitted); *see also Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992) (if the chance of harm is remote, subjective component of test for punishment is not established).  As in *McNeil,* Angle's allegations that Defendants housed more prisoners in the jail than it was designed to hold "are insufficient to establish that the defendants acted maliciously, intending to punish or injure him."  *Id.* at 124.

In Count VII of his amended complaint, Angle alleges that there were "no condiments on food trays. Also Food trays always came up cold." (Am. Compl. at p. 8.)  The Constitution requires that inmates

receive adequate amounts of nutritious food, *see Farmer*, 511 U.S. at 832, but Angle's allegation that the jail did not put condiments on the food trays or that food was served cold states no claim upon which relief can be granted.

In Count VIII of his amended complaint, Angle alleges that he was denied contact visitation while he was in the jail's medical unit. He specifically alleges that prisoners housed in the medical unit visited with their visitors over a video camera; other jail inmates got to visit "with their family members sitting in front of them with glass between them." (Am. Compl. at p. 9.)

There is, however, no Constitutional right to contact visitation, *Thorne v. Jones*, 765 F.2d 1270 (5th Cir. 1985), and conducting visitation by video camera states no claim upon which relief can be granted. Inmates have no independent constitutional right to visitation or to particular forms of visitation, *see Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454 (1989); *Smith v. Shettle*, 946 F.2d 1250 (7th Cir. 1991), and prison and jail officials have considerable discretion in determining the time, place, duration, and conditions of visitation. *Berry v. Brady*, 192 F.3d 504, 508 (5th Cir. 1999); *Peterson v. Shanks*, 149 F.3d 1140, 1145 (10th Cir. 1998). The conditions and terms of visitation Angle describes in his amended complaint fall within the discretion the Constitution affords to jail officials.

Angle also alleges that affording inmates on the medical unit

-14-

different visitation conditions than those in general population denied him equal protection of the law. The Fourteenth Amendment's equal protection clause requires States to treat similarly situated persons alike, but it does not require absolute equality or precisely equal advantages. *McCalvin v. Fairman*, 603 F. Supp. 342, 346 (C.D. Ill. 1985) (citing *French v. Heyne*, 547 F.2d 994, 997 (7th Cir. 1976)). Moreover, "[d]issimilar treatment of dissimilarly situated persons does not violate equal protection." *Women Prisoners of D.C. Dept. of Corrections v. D.C.*, 93 F.3d 910, 924 (D.C. Cir. 1996) (quoting *Klinger v. Dept. of Corrections*, 31 F.3d 727, 731 (8th Cir. 1994)). Prisoners housed in the jail's medical unit are not similarly situated with those confined in general population.

In Count IX of his amended complaint, Angle complains that the jail requires all outgoing phone calls to be collect, "putting a burden on" the inmates' families. (Am. Compl. at p. 9.) The exact nature of telephone service provided to inmates "is generally to be determined by prison administrators, 'subject to court scrutiny for unreasonable restrictions.'" *Carter v. O'Sullivan*, 924 F. Supp. 903, 909 (C.D. Ill. 1996) (quoting *Washington v. Reno*, 35 F.3d 1093, 1100 (6th Cir. 1994)). Requiring outgoing calls to be collect is reasonable, and courts routinely have rejected attacks on coinless prison telephone systems operated by other states on the grounds of expense and inconvenience. *Carter v. O'Sullivan*, 924 F. Supp. at 909; *Wooden v. Norris*, 637 F. Supp. 543 (M.D. Tenn. 1986). The

Constitution does not require jail officials to operate a coinless telephone system at the same cost as that available to non-prisoners.

In Count X of his amended complaint, Angle alleges that inmates on the jail's medical unit got no off-unit recreation time until after a grievance was filed. After the grievance, medical inmates got one day on the roof every other week. The Constitution requires that "some opportunity for exercise must be afforded to prisoners." *Anderson v. Coughlin*, 757 F.2d 33, 34 (2d Cir. 1985). "Where movement is denied and muscles are allowed to atrophy, the health of the individual is threatened, and the state's constitutional obligation is compromised." *Stewart v. McGinnis*, 800 F. Supp. 604, 615 (N.D. Ill. 1992), *aff'd.*, 5 F.3d 1031 (7th Cir. 1993).

> Although we have recognized the value of exercise and its medicinal effects, we have also consistently held that short-term denials of exercise may be inevitable in the prison context and are not so detrimental as to constitute a constitutional deprivation. *Thomas v. Ramos*, 130 F.3d 754, 764 (7th Cir. 1997) (70 day denial permissible); *Harris v. Fleming*, 839 F.2d 1232, 1236 (7th Cir. 1988) (28 day denial not deprivation); *Shelby County Jail Inmates v. Westlake*, 798 F.2d 1085, 1089 (7th Cir. 1986) (limited recreational activities sufficient where average prison stay was 10 days or less); *Caldwell v. Miller*, 790 F.2d 589, 601 (7th Cir. 1986) (no deprivation where exercise was denied for 30 days, but then allowed one hour indoor exercise for next 6 months); *but see Antonelli v. Sheahan*, 81 F.3d 1422, 1432 (7th Cir. 1996) (viable constitutional claim where prisoner denied recreational opportunities for 7 weeks); *Jamison-Bey v. Thieret*, 867 F.2d 1046, 1048 (7th Cir. 1989) (reversing summary judgment for prison officials where segregated prisoner denied exercise for 101 days).

*Delaney v. DeTella*, 256 F.3d 679, 683 (7th Cir. 2001).

Angle does not state how long he was housed on the medical unit or how long he was without outside recreation, nor does he allege any actual injury from denial of off-unit recreation. It is not reasonable to infer from the amended complaint that he was denied recreation for more than the time period the Seventh Circuit found in *Delaney v. DeTella* not to violate the Constitution.

In Count XI of his amended complaint, Angle alleges that the shower room in the jail's medical unit was unsafe because it had no duress button or intercom call button to summon help. Obduracy and wantonness rather than inadvertence or mere negligence characterize conduct prohibited by the Eighth Amendment. *McNeil*, 16 F.3d at 124. "To state a claim under the Eighth Amendment, [a plaintiff] must, at minimum, allege facts sufficient to establish that the defendants possessed a total unconcern for [his] welfare in the face of serious risks." *McNeil*, 16 F.3d at 124 (citations omitted); *see also Jackson*, 955 F.2d at 22 (if the chance of harm is remote, subjective component of test for punishment is not established). Even giving Angle the benefit of the inferences to which he is entitled at the pleadings stage, his allegations "are insufficient to establish that the defendants acted maliciously, intending to punish or injure him." *McNeil*, 16 F.3d at 124. Defendants did not deprive Angle of the minimal civilized measure of life's necessities by neglecting to place a duress button or

-17-

intercom call button in the medical unit shower.

In Count XII of his amended complaint, Angle alleges that Sheriff Dominguez and Warden Jones violated 18 U.S.C. section 1721 by selling postage stamps at a profit at the commissary. Section 1721 states that "[w]hoever, being a Postal Service officer or employee, . . . sells or disposes of postage stamps . . . for the purpose of increasing the emoluments, or compensation of any such officer or employee" is subject to a fine or imprisonment. Because section 1721 applies only to postal employees, it has no application to Defendants Dominguez and Jones.

In Count XIII of his amended complaint, Angle alleges that mail coming into the jail was not delivered to inmates until the next day. He asserts, citing 18 U.S.C. section 1703 for the proposition, that "[i]f mail comes in on Monday, it needs to be delivered on Monday." (Am. Compl. at p. 10.) Section 1703, like section 1721, applies only to postal service officers or employees, and has no application to Sheriff Dominguez and Warden Jones.

A delay of delivery of even legal mail for a day or two does not violate the Constitution. *See Owen v. Shuler*, 466 F. Supp. 5, 7 (N.D. Ind. 1977)(finding no constitutional violation where legal mail arriving at the prison on Friday or Saturday normally would not be delivered until Monday). Moreover, unmonitored correspondence between prisoners and their friends and family poses a genuine security threat, and the Constitution does not preclude

-18-

jail officials from checking incoming non-legal mail for contraband.  *Smith v. Shimp*, 562 F.2d 423, 426 (7th Cir. 1977) (citing *Wolff v. McDonnell*, 418 U.S. 539, 577 (1974)).  It is not unreasonable to allow jail officials twenty-four hours within which to check incoming mail for contraband before delivering it to inmates.


CONCLUSION

    For the reasons set forth above, the Clerk is **ORDERED** to dismiss this case **WITH PREJUDICE** pursuant to 28 U.S.C. section 1915A(b)(1).  The Clerk is **FURTHER ORDERED** to close this case.


**DATED:  May 10, 2005**                                S/RUDY LOZANO, Judge
                                                         United States District Court